LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410

DENNIS CUNNINGHAM, SBN 112910
115A Bartlett St.
San Francisco, CA 94110
Telephone: 415-285-8091
Facsimile:  415-285-8092

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN MOHRBACHER, ERIN ELLIS, DOMINIQUE JACKSON, CHRISTINA ZEPEDA, ALEXIS WAH, AND KELSEY ERWIN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br>Defendants. | No. 13-cv-00050<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION |

## 1.  INTRODUCTION

Certain plaintiffs herein respectfully ask to come before the Court immediately, on an emergency basis, seeking its urgent intervention by way of peremptory Orders that will overcome defendants' stout and remorseless refusal to provide needed elementary medical attention and proper pre-natal care to pregnant women, plaintiffs, imprisoned in the Alameda County Jail at Santa Rita.

These three named plaintiffs,  JACLYN MOHRBACHER, ERIN ELLIS, DOMINIQUE JACKSON, Santa Rita prisoners, each of them experiencing some difficulty in their pregnancy, as will be shown, are being pointedly and systematically refused and denied needed, necessary medical care, and accommodation of any sort—balanced, healthy and adequate diet; counseling, exercise,

blankets and warm clothes—for their delicate condition, by defendant jail guards and supervisors at Santa Rita. Instead, they have been repeatedly told they should get abortions.

Defendants' striking antagonism and remorseless punitive attitude towards plaintiffs both magnifies and confirms the grievous and mounting threat to the welfare of these women—and their unborn children. Moreover, this is in circumstances where all concerned are well aware that at least two other pregnant women have miscarried at Santa Rita in recent weeks, and Plaintiffs here allege and believe the same antagonism, callousness, and denial of adequate care, diet, exercise, blankets and warm clothes and fresh air—let alone well-considered counseling and planning assistance and other necessities of health and preparation for an expectant mother—which they also experience, led to those miscarriages and fetal deaths.

But, instead of a natural and humane response to plaintiffs, and pursuant to an evident illicit, unconstitutional, misogynist policy and practice of the Sheriff's Department—which is further and more broadly challenged by these plaintiffs and others in the within lawsuit—plaintiffs and others are routinely scorned, abused, denied and refused by defendant guards and other staff in the Jail. These three women in particular, movants, whose pregnancy is the point, in addition to being denied decent, reasonable and obviously necessary medical care by defendants while known to be pregnant, have been kept in handcuffs and other restraints for long periods for no good reason; left in solitary confinement—where another woman recently was confined alone and unattended while she actually gave birth—repeatedly and redundantly strip-searched for no good reason; left outdoors in the cold, in restraints, without wraps, for hours on end; accused again and again of dope use and addiction, and angrily told they should have abortions, all by defendant jail guards, supervisors and commanders, in a systematic program and practice of the defendant Department and its commanders and exemplars, all as more fully set out in the attached Declarations and the within Complaint.

The sanctity of human life is a fundamental underpinning of our society. This sanctity includes the right of women to become pregnant and birth new life into our world. The Universal Declaration of Human Rights adopted by the United Nations General Assembly echoes our own Declaration of Independent by stating in article three "Everyone has the right to life, liberty and security of person." California Penal Code §187 states: "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Penal Code §187 excludes therapeutic abortions are or abortions done with the consent or was solicited by the mother of the fetus.

Furthermore, whatever punishment is inflicted or justified to be inflicted on the mother, who is

the vessel for the fetus, that punishment cannot be of such severity as to injure the fetus, who has no guilt and no responsibility for any action which may be attributed to the mother.

In the present case, plaintiffs are pregnant prisoners under the custody of the Alameda County Sheriff's Office.  Currently housed at Santa Rita Jail, each of the plaintiffs has expressed a desire to carry their fetus to full term, and to deliver healthy, full term babies.  None of the women desire an abortion and are concerned that the abuse; neglect; hostile environment to pregnant women prisoners and general hostility to women prisoners; and, programmatic mistreatment including both neglect as well as damaging treatment, will harm their fetuses, and threatens in an active and demonstrated manner, the viability of their fetuses.  Plaintiffs perceive within Santa Rita Jail, programmatic coercion for abortions; and when pregnant prisoners refuse abortions, an escalation of neglect and abusive treatment.   The fact that a large percentage of women who are pregnant while under the custody and control of defendants, result in some form of termination of their pregnancy before term, demonstrates the validity of the fears and concerns expressed.

STATEMENT OF FACTS

Women prisoners are held by the Alameda County Sheriff's Office in its Santa Rita Jail facility. Santa Rita is considered a mega jail with the capacity to house over 4,000 inmates.  However, due to recent policy changes de-emphasizing incarceration, the current population of Santa Rita has diminished to between 2,500 to 3,000  inmates.  Approximately ten percent (10%) of the total population at Santa Rita Jail are women.  And among these 250 women, at any given time, there are ten (10) pregnant women.  In the course of a year, plaintiffs estimate 150 pregnant women will cycle through Santa Rita Jail.

In the last few months, a number of women have decided to step forward and seek legal redress of a condition which has been pervasive and long standing, and that is the programmatic mistreatment of pregnant women that is part and parcel of Defendants' continuing unequal treatment of women as compared to men; the failure of Santa Rita Jail to meet the requirements of Penal Code §3409 to provide the materials women prisoners with the necessary materials for women's feminine hygiene and reproductive health; failure to develop and/or implement appropriate plan of care for pregnant women as required by 15 CCR §3355.2.  Pregnant women face routine and regular coercion to abort the pregnancy.  The medical care plaintiffs receive routinely consists of pressure to consent to an abortion.  And even when a plaintiff refuses an abortion and state that they wish to carry their fetus to term, defendants have sent male transports to try and pressure plaintiffs to accept an abortion.

Mohrbacher v. Alameda County Sheriff's Office, P&A In Support of Motion for TRO/PI 2018.1.4

Instead of appropriate nutrition for pregnant women, pregnant prisoners are fed peanut butter sandwiches twice a day, and given an extra ration of milk. This is lunch and snack. Dinner is beans or some other protein, and some carbohydrate. The quantity is insufficient and there are seldom any fresh fruits or vegetables. Breakfast is served between 3:30 and 4:30 a.m., and if plaintiffs and members of the class cannot get up for breakfast, then there is a 19 hour gap between dinner (served between 4 and 4:30 p.m.) and lunch (served at noon).

When pregnant women complain that they are not feeling well, the guards' response is to accuse them of using illegal drugs and instead of seeking care for these women, they are routinely placed in solitary confinement and subjected to repeated strip searches and body cavity searches. (Dec. Mohrbacher, attached as Ex. C to dec. of Yolanda Huang) Plaintiff Mohrbacher has been told that she refuses an abortion because she is a drug user. This regular and routine harassment include disturbing plaintiffs' sleep either to take vital signs, or to make plaintiffs stand up for searches at 6 a.m. in the morning. Breakfaast is served at 3:30 and any plaintiff who fails to rise for breakfast is faced with 19 hours between dinner and lunch.

Defendants are required to develop a care plan for pregnant prisoners. Defendants' inconsistent and arbitrary care plan consists of vital signs monitoring (blood pressure and heart rate), with waking plaintiffs and members of the class up at 2 or 2:30 in the morning, or neglect for weeks on end. On court days, plaintiffs and members of the proposed class have 16 to 17 hour days, where they are required to rise at 4 am and do not return to their cells until after 8 p.m. Plaintiffs and proposed class members spend a majority of court days in cold, concrete holding cells, where they must stand or else be required to sit or lay on the cold concrete floor.

As a result of this programmatic coercion and mistreatment, a significant number of pregnancies result in pre-term termination. Women who arrive in Santa Rita Jail during a late term pregnancy also do not receive adequate care. Recently, one woman who complained of cramps and pain, was placed into solitary confinement per Santa Rita's standard routine of meting out punishment and abuse onto pregnant prisoner. Then despite the mandate that there are half hour checks on her, every deputy ignored her for hours. The cramps ths woman prisoner was experiencing were labor cramps, and she began screaming. The sounds of her screams was agony for the other women prisoners. Her screaming went on for hours, during which time, not a single deputy checked on her welfare. This woman was forced to deliver her baby, alone, in solitary confinement. (See Dec. of Denis Rohrbacher, attached as Ex. D to the Dec. of Y. Huang).

As plaintiffs attempted to speak out and seek review of these horrendous conditions, defendants took active steps to deny plaintiffs access to counsel so that plaintiffs could not sign their declarations.

## STATEMENT OF LAW

**I. PLAINTIFFS MEET THE STANDARDS FOR ISSUANCE OF A PRELIMINARY INJUNCTION.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc. (2008) 555 U.S. 7, 20. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Id. at 24, quoting Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987).

Here, the evidence that plaintiffs will suffer irreparable injury is clear. If defendants' programmatic mistreatment is not stopped immediately, many of the pregnant women face the possibility that their unborn child will suffer injury and not be able to survive till full term.

Plaintiffs need not wait until their fetuses become so injured as to result in a miscarriage to invoke the Court's jurisdiction. A party invoking a court's jurisdiction must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472 (1982) (citation and internal quotation marks omitted). In a suit for prospective injunctive relief, a plaintiff is required to demonstrate a real and immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95,101-02 (1983) (the threat must be " 'real and immediate' " as opposed to " 'conjectural' or 'hypothetical' "). The key issue is whether the plaintiff is "likely to suffer future injury." Id. at 105.

**II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

A.   Defendants' Conduct Violates the 5th and 14th Amendment.

A woman's right to make the decision whether to keep or terminate her pregnancy is her's

alone under the 14th Amendment's concept of personal liberty and restrictions upon state action. *Roe v. Wade* (1973) 410 U.S. 113, 153. Since this is a fundamental right, state actions "may be justified only by a 'compelling state interest,'" *Roe v. Wade*, 410 U.S. 113, 155. And California statute and regulations clearly hold that the decision regarding keeping or terminating a pregnancy belongs to the woman. Penal Code 187.

B. <u>Defendants Coerce and Threats to Plaintiffs to Abort Their Unborn Babies Is Illegal.</u>

Abortions may only be done with the consent of the mother, or if solicited by the mother. Penal Code §187. Active coercion by defendants in the form of telling pregnant prisoners that they should, or need to get an abortion, or threatening and taking punitive action against pregnant prisoners if they refuse an abortion is a clear violation of plaintiffs' constitutional and state statutory rights.

C. <u>Defendants Cannot Engage in Programmatic Abuse and Neglect Which Bring About Miscarriages</u>

Given the horrendous and horrific descriptions of the conduct by defendant guards against pregnant prisoners, it is undeniable that defendants' conduct are blatant violations of plaintiffs' fundamental rights and rights under California statute.

State law regulations clearly require defendants to provide care and to develop a plan of care for pregnant prisoners. 15 CCR 3355.2 outlines a detail process which defendants are required to engage in, including:

   (b)(1) "…a plan of care will be determined."
….
   (h) A pregnant inmate who is not eligible for a community treatment program shall have access to complete prenatal health care which shall include:

   (1) A balanced, nutritious diet per subsection 3050(a).
   (2) Prenatal and postpartum information and health care, including, but not limited to, necessary vitamins as prescribed by a doctor.
   (3) Information pertaining to childbirth education and infant care.
   (4) Dental care pursuant to subsection 3355.1(c).
                           15 Cal. Code Regs. § 3355.2

Nowhere is programmatic abuse permitted, much less programmatic abuse that frequently results in miscarriages. Nowhere are sheriffs permitted to coerce or threaten pregnant prisoners to consent to abortions. For these reasons, Plaintiffs are likely to succeed on the merits.

D.  Defendants' Denial Of Counsel Violates Plaintiff's Right To Free Speech.

Plaintiffs who are current inmates retain their constitutional rights to free speech. Penal Code §§2600, 2601 which states that only those rights which are "necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public" may be restricted. And California courts have held that this gives prisoners the right to freedom of the press, which cannot be restricted because the "state disapproves of their beliefs or the content of their expression." *Bailey v. Loggins,* 32 Cal. 3d 907, 915, (1982)

Therefore, defendants' actions in restricting plaintiffs' ability to speak with counsel, is an unjustified and illegal restriction. Clearly, it is not in defendants' interest to have plaintiffs inform others of the programmatic mistreatment and coercion they are engaged in. Clearly, it is not in defendants' interest to have public scrutiny of defendants' actions. However, these concerns are not justifications for blocking and preventing plaintiffs from speaking with counsel. Certainly defendants' desire to avoid public scrutiny is not a compelling state interest nor does it further any compelling interest. Most obviously, Defendants' actions are neither "necessary" nor the least restrict means, i.e., the means that least infringes on the women's First Amendment rights, by preventing these women from expressing concern over their treatment and requesting medical assistance for both their own health and the life of their fetuses.

### III.  PLAINTIFFS JACLYN MOHRBACHER, ERIN ELLIS, AND DOMINIQUE JACKSON WILL SUFFER IRREPARABLE INJURY UNLESS DEFENDANTS ARE ENJOINED.

Plaintiffs Mohrbacher, Ellis and Jackson will suffer irreparable injury if this Court does not require Defendants to immediately provide appropriate medical services and a plan of care for each of them, and to cease the coercion for abortion, and the programmatic mistreatment. A pregnancy, and the fetus are, by their very nature, of limited duration, and of delicate condition. The fetus cannot absorb or maintain long term, or extensive abuse. A woman who is mistreated can easily miscarry, and cannot later be easily made whole.

Here, plaintiffs Mohrbacher, Ellis and Jackson face irreparable harm if the abuse results in a miscarriage, or if the neglect and abuse results in injury and damage to their fetuses. Plaintiffs are being exposed to increased medical risks by the increased neglect, and time is of the essence in the proper development of the babies. Similar delays imposed on similarly situated pregnant women within Santa Rita Jail will cause the same irreparable harm to them.

Plaintiffs will also be irreparably harmed by being denied the ability to meet and speak with counsel, and to review the documents pertinent to this litigation. ""The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**IV.  THE BALANCE OF HARM STRONGLY FAVORS PLAINTIFF.**

As discussed, supra, plaintiffs and others similarly situated will suffer irreparable harm in the absence of relief from this court.  In contrast, the injunction would impose no measurable harm on Defendants.  Defendants have no legal right to coerce women in their custody to abort.  Defendants have no legal right to programmatically mistreat pregnant prisoners.  Plaintiffs are also not requiring Defendants to do anything more than what is already required by California statute and regulations as articulated by 15 CCF §3355.2.

**V.  A TRO/PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST.**

The public interest is served when constitutional rights and fundamental rights are protected. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights.' " (cite omitted)  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

In the instant case, there is no conceivable way the public interest will be adversely affected by maintaining and protecting the health of pregnant Plaintiffs and their fetuses.  Thus, there is no harm done to the public interest.

**V.  CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court issue a temporary restraining order to (1)  permit immediate full and adequate, sanitary access to each of them, and all necessary follow-up, by a qualified OB-Gyn physician designated by plaintiffs, and any needed assistants, and directing them also to facilitate any necessary follow-up care including adequate nutrition and medical care or other action to protect the health and well-being of these (and other) prisoners who are mothers-to-be, and their children-to be, to develop an appropriate and necessary plan of care; and, (2)  The Court also ought to direct that no punitive or arbitrary actions—such as pointless shackling and strip searches, confinement outdoors in the cold or with open windows, denial of clean laundry or toilet or feminine products and the like—be taken against plaintiffs or other women prisoners; (3)   And the Court is asked further to direct defendants and all of them and theirs to cease any interference or temporizing with attorney visiting or communication rights and privileges of Yolanda Huang, Esq. or any other attorneys, investigators or qualified legal assistants

working on this case; and any and all further relief, including emergency relief, as may be deemed just and appropriate.

January 4, 2018                                    Respectfully submitted,

                                                   ATTORNEYS FOR PLAINTIFFS

                                                   LAW OFFICE OF YOLANDA HUANG


                                                   */s/ Yolanda Huang*_____
                                                           YOLANDA HUANG



                                                   DENNIS CUNNINGHAM



                                                   */s/ Dennis Cunningham*_____
                                                           DENNIS CUNNINGHAM