LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410

DENNIS CUNNINGHAM, SBN 112910
115A Bartlett St.
San Francisco, CA 94110
Tel/Fax: 415-285-8091
denniscunninghamlaw@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALAMEDACOUNTYWOMEN PRISONERS And Former Prisoners & Pregnant Prisoners,** JACLYN MOHRBACHER, ERIN ELLIS, DOMINIQUE JACKSON, CHRISTINA ZEPEDA, ALEXIS WAH, AND JAMIE JOHNSTON, KELSEY ERWIN, DENISE ROHRBACH, SHANI JONES, ANDRANIA YANCY, DAWN DEDRICK, JAMILA LONGMIRE, SANDRA GRIFFIN, NATALIE GARRIDO, JAZMINE TATE, MONICA NUNES, ANDANNA IBE, MARCAYSHA ALEXANDER, DIAMOND COOPER, MARY MAPA, ROSE PEREZ, MARTINA GOMEZ, TIKISHA UPSHAW, ANNETTE KOZLOWSKI And JANE DOEs Nos. 1-- X on behalf of themselves and others similarly situated,  as a Class, and Subclass, <br><br> Plaintiffs, <br><br> vs. <br><br> ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, T. POPE, T. RUSSELL, D. SKOLDQVIST, LT. HATTAWAY, SGT. CALAGARI, DEPUTY DIVINE  (#512), DEPUTY DEBRA FARMANIAN, DEPUTY | No. 3:18-cv-00050-JD <br><br> **SECOND AMENDED COMPLAINT** for INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS and OTHER WRONGS <br><br><br> **Jury Trial Demanded** |

Page 1 of 24

Mohrbacher v. Alameda County Sheriff's Office. Second Amended Complaint, Case No. 3:18-cv-00050-JD

WEATHERBEE (#238),  DEPUTY TANIA POPE, DEPUTY WINSTEAD, DEPUTY CAINE,  ALAMEDA COUNTY   and John & Jane DOEs, Nos. 1 - 50.
**and,**
**The CALIFORNIA FORENSIC MEDICAL GROUP,** a corporation; its Employees and Sub-Contractors,  and Rick & Ruth ROEs Nos. 1-50,
**and,**
**ARAMARK CORRECTIONAL SERVICES, LLC,** a Delaware Corporation; its Employees and Sub-Contractors, and Rick and Ruth ROES Nos. 51-100.
                              Defendants

Plaintiffs JACLYN MOHRBACHER, ERIN ELLIS, and DOMINIQUE JACKSON, now joined by others named within, on behalf of themselves and those they speak for and seek to represent herein---along with those others now named and to be named individually as plaintiffs---for themselves and others, pursuant to the Court's discussion with Counsel at the status call on January 8, 2018, and as of right per R.15(a) F.R.Civ P, now submit this amended version (FAC) of their previously filed Complaint, as follows:

## I.  PRELIMINARY STATEMENT

1.      This Second Amended Complaint is submitted in response to the Court's recognition that the case evolved, while the Motion demanding emergency intervention was pending, as plaintiffs' ongoing investigation of maltreatment endured by pregnant women in Santa Rita has revealed a broadly degraded, oppressive regime in the jail, which violates the rights of all the women held there in substantial, concrete, injurious ways; the harmfulness of which to pregnant women and their babies is obviously then magnified, intolerably.

2.      Pregnant Women Prisoners at Santa Rita are held in conditions, and (mis)treated by its custody and medical staff, in ways which are wrongful, and oppressive, wholly unjustified by any legitimate jail purpose—indeed counterproductive to all good faith custody practice—and harmful, injurious and threatening to the women's health and well-being and that of their unborn children, all to a degree which violates their fundamental rights under the Constitutions of the United States, and California, and also fails to satisfy statutory and regulatory standards and requirements, and indeed the jail's own policies.

3.      Sheriff's Department practices and attitudes towards women prisoners and their needs

Page 2 of 24

Mohrbacher v. Alameda County Sheriff's Office. Second Amended Complaint, Case No. 3:18-cv-00050-JD

and wants, regarding medical problems, feminine hygiene, sanitation (and rodent infestation), nutrition, the storage, preparation and service of food, laundry, clean-up, etc.—not to mention harsh discipline and illicit punishment, stultified grievance practice, and all the other hot and cold interpersonal aspects between the keepers and the kept, in the myriad processes of jail life—produce a group living environment which is loud, mean, chaotic, remorseless, endlessly stressful and unsafe in all ways.  Pregnant prisoners suffer from a poor, meager and often unwholesome diet, which leaves them—all of them—constantly hungry. There is a near-complete lack of regular exercise, and proper rest, and, truly, basic respect for their singular medical and other needs.  Except for being offered abortion, sometimes quite urgently; and sometimes, randomly being taken to the hospital for check-up, they basically get no help, no information, no counseling, no nothing.

4.      That is to say that daily life in Santa Rita is toxic and dangerous to a pregnant woman without a doubt; and even more so to her baby, that is elementary.  Plaintiffs mean to assert fully the material rights of each unborn child affected herein—including those where the life was lost under defendants' mindless tyrannies—and all other cases found lurking and festering in these dismal circumstances.  Incredibly—in the midst of such a hot, joined-battle stage in the case, we received a report this week of March 26 that a woman prisoner gave birth during her current incarceration and the baby was immediately taken from her and has not been returned.  Several days later this new mother has been denied any opportunity even to touch her new baby —let alone hold it, feed it, comfort it and comfort and console herself in the warmth of the miracle of its whole birth.  It is beyond any expression of outrage that defendants would employ or associate with anyone with the deep cruelty, sadism, and perversity of mind and soul that would be required to carry out such a monstrous act, because the mother is a prisoner.  That the pretense will be that "security" or some other supposed rule required it only makes the story more sickening.

5.      Even in the limited amount of investigation we have managed to accomplish since the inception of the case, it is beyond clear, and patent, that the county jail environment is radically unsuitable, deleterious, and gravely threatening and dangerous to expectant mothers; and that the situation cannot be truly remedied without establishment of calm, appropriate, separate quarters for their confinement.  The obvious, fundamental rights, and above all the minimum physical and health needs of the altogether blameless babies in wombs—given the inevitably harsh and unforgiving nature of county jail life, as shown herein and to be shown; and, more crucially here, the relentless antagonism and heartless nastiness so frequently shown to women prisoners by so many staff

members, both deputies and so-called medical people—require no less.

6.      While the effects are less severe, perhaps, and for sure innocent lives-to-be are not directly affected, it is obvious that the conditions complained of herein are injuriously—and we say unconstitutionally—visited upon all the women prisoners at Santa Rita as it is being operated today. In the original Complaint, plaintiffs had included an assertion on behalf of all women Santa Rita prisoners that they were all victims of wrongful discrimination vis-a-vis men prisoners there, with respect to almost all aspects of Life in Jail: jobs, out-of-cell time, programs, family visits, the list goes on.  A class of all women prisoners was proposed for these claims, which we now seek to adjust, to accommodate these emergent claims about the harmful conditions all women endure and the remedies, legal and equitable, they may be entitled to, individually where appropriate, and as a class. As to which we then alleged a Subclass of the pregnant ones.

7.      However—and this may mean that a separate class is needed rather than a subclass— plaintiffs mean specifically to include former prisoners who were pregnant, and were or may have been maltreated as several of our initial plaintiffs were —with their various birth outcomes having been affected by their time in Santa Rita in whatever demonstrable ways, if any—going back at least three years; let's say from January One, 2015, to now.

8.      In contrast, the broad equitable relief—and, we believe, ongoing supervision by the Court—which will be needed to stop and rectify the miserable, egregious flow of nonfeasance, misfeasance and malfeasance, which denies basic rights on a wholesale basis, to a degree which absolutely shocks the conscience, with which this jail is run.  But it must be noted, as the Court saw, that the case has expanded factually to include claims of all women, the Class, against the lousy conditions the plight of pregnant women first brought to light.

9.      So here we will adopt and re-allege the descriptions and stories and events recounted by the many women who have come forward, and asked to be included, who we are also naming as additional plaintiffs, whose sworn declarations recounting their experience and knowledge of events and conditions in Santa Rita are already before the Court.  These serve as a cumulating factual predicate for the Injunction claims the actions and practices of the defendants gave rise and still give rise to, as well as to possible damage actions by or for individual class or Subclass members, or either *en masse*.

10.      Of course, this Second Amended Complaint is made and submitted upon the Court's own determination that the previous vehicle wouldn't do, and so it is doubly subject to scrutiny as

here proposed, and the undersigned prays for approval of this Second Amended Complaint —with looks forward to the further refinement and exploration of the issues, and rules, and needs...

&ast;&ast;  &ast;&ast;  &ast;&ast;  &ast;&ast;

11. Beyond the urgent issues involving pregnancy, the plaintiffs herein (in their final grouping), on behalf of themselves and all women prisoners at Santa Rita—whose injuries and deprivations at the hands of defendants do not involve pregnancy, but very often do involve nasty and hostile refusals to acknowledge or respond to feminine hygienic needs—now also again complain **as a Class**, as described and asserted within, of extensive, systematic discrimination against the women prisoners at Santa Rita, compared to the men.  Invidious treatment of women occurs in all aspects of life in the jail: jobs, food, access to bathrooms, showers, hygiene, clean clothes, fresh air and out-of-cell time, education classes and activities, counseling, phone calls, family visits, and more.  These women also seek injunctive relief, under the First, Fourth, Fifth and Fourteenth Amendments per R.65 F.R.Civ P., and the Bane Act (Cal Civil Code §52.1)—requiring a total cessation of inhumane and sexually and gender-biased unequal treatment and forms of treatment of women prisoners by defendants, and providing effective, outside monitoring—on behalf of themselves and **others similarly situated, namely women prisoners currently held or to be held in the future at the Santa Rita Jail, as a Class,** per Rule 23, F.R.Civ. P.  Plaintiffs likewise seek full compliance with 15 CCR Titles 11 and 12; full and appropriate compliance with California Penal Code §6030, full implementation of California Penal Code §3409, and implementation of Penal Code §1170.06 and California Health & Safety Code §11222, particularly for the benefit of pregnant women; all to ensure the proper care and treatment of women prisoners.

12. This Second Amended Complaint thus adds additional named plaintiffs, listed below; adds as defendants ARAMARK Correction Services, LLC ("Aramark") and its involved personnel.

13. As before, plaintiffs have named several high-ranking members of the defendant Sheriff's Department individually, along with a number of John and Jane Does who are guards and other staff members who have been involved in the various tyrannies against women prisoners complained of herein—and whose number will now include various unknown and named contractors and their other employees assigned to the Santa Rita account—all of whom will or would be subject to the injunctive orders, directions and prohibitions sought herein, as co-defendants;

14. Also named are the Sheriff's Department and the County itself, CFMG, Inc. also, in *respondeat* with respect to the State Law claims herein; and also for their unconstitutional explicit

and de facto polic(ies) of discrimination and systematic maltreatment—particularly of pregnant and menstruating women, within the rule of *Monell v. New York City Dept. of Social Services*, 436 US 568 (1978).

15.     Plaintiffs name ARAMARK Correctional Services, L.L.C.—and JOHN & JANE ROEs Nos. 51-100, their involved cooperators and employees—as co-defendants; where, in truth, they are third party defendants vis-a-vis the defendant Sheriff *et al*, who plaintiffs continue to charge are fully responsible for all the food-related horrors and defaults that have befallen plaintiffs, and who cannot be permitted to foist responsibility on this deep-pocket corporate behemoth, who the Sheriff is in the Meals Ready to Eat business with resulting in the sadistic denial of adequate food, service f stale, expired, old and spoilt food, food that has been contaminated by rodents and other vermin, the requirement that pregnant women and women prisoners in general are deprived of decent, fresh,  nutritious and tasty food; resulting in pregnant women and women prisoners remaining hungry in order to encourage and require that the prisoners purchase commissary.

## II. JURISDICTION & VENUE

15.     The Jurisdiction of this honorable Court derives from the provisions of the First, Fourth, Fifth, Thirteenth and Fourteenth Amendments to the United State Constitution, by way of the Civil Rights Acts, 42 U.S.C. §§1981 (as to certain plaintiffs), 1983 et seq. and 1988;  28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution), and, by pendent jurisdiction,  Secs. 52.1, and 50, of the California Civil Code.

### Intradistrict Assignment

16.     The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## III.  PARTIES

### Plaintiffs

17.     In this Second Amended Complaint the following additional present and former Santa Rita prisoners, pregnant and otherwise, are joining the original plaintiffs, some as members of the pregnant Subclass and all as would-be representatives of the Class as a whole.  ERIN ELLIS, DOMINIQUE JACKSON, JAIME JOHNSTON are each pregnant prisoners currently in the custody and control of the Alameda County Sheriff's office. Each of them wishes to carry her pregnancy to

term and have a healthy baby, and each of them wants and demands the necessary nutrition, medical and other support which that minimally requires. JACLYN MOHRBACHER and CHRISTINA ZEPEDA are formerly pregnant prisoners who suffered a miscarriage due to the mistreatment received at the hands of defendants, while under the custody and control of the Alameda County Sheriff's Office.  ALEXIS WAH, KELSEY ERWIN, DENISE ROHRBACH, SHANI JONES, DAWN DEDRICK, JAMILA LONGMIRE, NATALIE GARRIDO, JAZMINE TATE, MONICA NUNES, are women who were formerly imprisoned at Santa Rita jail. MARCAYSHA ALEXANDER, ANDANNA IBE, ANDRANIA YANCY, SANDRA GRIFFIN, DIAMOND COOPER, MARY MAPA, ROSE PEREZ, MARTINA GOMEZ, TIKISHA UPSHAW, ANNETTE KOZLOWSKI are currently incarcerated prisoners in Santa Rita Jail.

18.     All plaintiffs whether formerly incarcerated or currently incarcerated, experienced and endured the repeat, rampant, and continual and mistreatment including the unequal (as compared to men) treatment, that women prisoners receive include insufficient classes and work opportunities, lack of clean laundry; insufficient laundry; lack of sanitation, and unhygienic conditions;  insufficient and lack of feminine hygiene supplies; unhygienic, frequently rodent infested, insufficient and poor quality food; denial of First Amendment rights by being denied the right to speak during meals upon pain of punishment and being told where to sit; enduring the arbitrary infliction of punishment depending on the mood or often whim of the sheriff's deputy on duty; lack of adequate mental health care; denial of regular outdoor recreation opportunity; and denial of POD time.

19.     In addition, JAMILA LONGMIRE, experienced an egregious lack of medical care in Santa Rita Jail when she fell off a bunk and fractured her back, was made to sleep on a mat on the floor of her pod and was not given medical care for weeks after the fall.

20.     ANDANNA IBE, currently incarcerated in Santa Rita, gave birth while incarcerated in November 2017 at Highland Hospital, was unable to call any family or friends to be present during labor, had to endure labor while being viewed by two deputies, including male deputies. Immediately following the delivery of her child, was forced to be chained and shackled to her hospital bed, spread-eagle with two male guards in her hospital room minutes after giving birth.  Her baby was taken away without being given the opportunity to even touch her baby.  She was denied the use of a breast pump.  Her only contact with her baby has been one or two photos.

21.     MARCAYSHA ALEXANDER is currently incarcerated at Santa Rita and is post partem. She has been forced to her breast milk she pumps because the jail will not allow her breast

milk to get to her baby outside, additionally she was served food containing mouse feces.

## Defendants

22.    Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is a "public entity" within the definition of Cal. Govt. Code § 811.2; Defendant GREGORY J. AHERN is the Sheriff of Alameda County.  As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Alameda County jails, as described below. He has, therefore, wholly or in part, directly and proximately caused, and will continue in the future to cause, the injuries and violations of rights set forth below. Defendant Ahern is sued in his official capacity only.

23.    Defendant BRETT M. KETELES is the Assistant Sheriff for Alameda County in charge of the Detentions and Corrections Unit and defendant TOM MADIGAN is the commander in charge of the Detentions and Corrections Unit which includes the two Alameda County jails, Glen Dyer and Santa Rita, and was so in charge of Santa Rita Jail on December 26, 2016. Defendants BRETT KETELES, TOM MADIGAN, and T. RUSSELL as employees of the Sheriff's Office and as the detention and corrections commander for the Sheriff's Office, held command and policymaking positions.  They, along with Defendant Ahern, participated in the planning, supervision, and the execution of the manner in which plaintiffs and class members are incarcerated in the Alameda county jail facilities and ACSO's conduct complained of herein.  Defendants BRETT KETELES, TOM MADIGAN, and T. RUSSELL caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Alameda County jails, particularly as to the treatment of women as described below.

24.    Defendant D. SKOLDQVIST was and is the Watch Commander for Santa Rita Jail. Defendants D. SKOLDQVIST, T. RUSSELL, LT. HATTAWAY and SGT. CALIGARI, were the responsible officers for Santa Rita Jail.  Defendants, D. SKOLDQVIST, T. RUSSELL, LT. HATTAWAY, SGT. CALIGARI at all times relevant herein, are and were employees of the Sheriff who held supervisory, command and/or policy-making positions, and who participated in the authorization, planning, supervision, and the execution of the sheriff's conduct complained of herein.

25.    At all times relevant herein, the individual Defendants AHERN, KETELES, MADIGAN and RUSSELL were officers and employees acting under the color of law, under color of their official authority and in the scope of their employment as Command and Supervisory Personnel

Page 8 of 24

Mohrbacher v. Alameda County Sheriff's Office. Second Amended Complaint, Case No. 3:18-cv-00050-JD

of the Alameda County Sheriff's Office.  Additionally, upon information and belief, one or more of these Defendants failed, with deliberate indifference to plaintiffs' and class members' rights, to adequately train and supervise ACSO sheriff's deputies and staff who were involved in violating the rights of the plaintiffs and class members. All of the above individual defendants are sued in their individual and official capacities.

26.     At all times relevant herein, all of the above individual Defendants Deputies DIVINE, DEBRA FARMANIAN, CAINE, TANIA POPE, DEPUTY 'A', and DEPUTY "S", were officers and employees were acting under the color of law, under color of authority and in the scope of their employment with the Alameda County Sheriff's Office, and were the guards and deputies on duty at Santa Rita Jail with direct control over plaintiffs and members of the class.

### Medical services defendants

27.     CFMG and its various employees and sub-contractors, are apparently retained by the County to provide medical services to Santa Rita prisoners on behalf of the defendant Sheriff's Department; and the County defendants apparently believe, and assert, that, in making a contract with CFMG for that purpose, the Department and its defendant minions shed and shifted and absolved themselves of any responsibility or liability for timely and effective delivery of such services to prisoners in their custody. Needless to say, plaintiffs disagree absolutely that the County defendants are to any degree 'off the hook,' or insulated from legal responsibility for provision of proper care to prisoners in their custody by virtue of such a third-party arrangement.  Rather, the newly-added medical personnel---unknown individuals named herein as RICK & RUTH ROEs Nos. 1-50---and their employer are jointly and severally liable to plaintiffs and the Subclass, with the County defendants, for the failures and deficiencies in the care and attention provided to pregnant prisoners.

### Food services defendants

28.     Aramark Correction Services, LLC, has self-identified as the entity with whom the primary defendant, Alameda County Sheriff's Office, and the County of Alameda, contracts with to provide MRE or meals ready to eat for the prisoners under the Sheriff's custody and control as well as a profit business center in preparing these MREs for sale and distribution to other jail and custodial facilities.  The County defendants apparently believe, and assert, that, in making a contract with Aramark for that purpose, the Department and its defendant minions shed and shifted and absolved themselves of any responsibility or liability for timely and effective delivery of such services to prisoners in their custody. Needless to say, plaintiffs disagree absolutely that the County defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

are to any degree 'off the hook,' or insulated from legal responsibility for provision of proper nutrition to prisoners in their custody nor for the maintenance of sanitary and healthy food preparation facilities by virtue of such a third-party arrangement.  Rather, the newly-added MRE preparation staff---unknown individuals named herein as RICK & RUTH ROEs Nos. 51-100---and their employer are jointly and severally liable to plaintiffs and the Subclass, with the County defendants, for the failures and deficiencies in the food preparation and the actual nutrition and food provided to pregnant prisoners and other prisoners.

29.     Plaintiffs are informed and believe and therefore allege that each of said defendants DOES 1 through 50, are and/or were agents or employees of Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE and acted within the scope of that agency or employment or under color of state law.  The same is true with respect to the relations between defendant CFMG and its practitioners and other employees assigned to the Santa Rita account, ROEs 1-50, and their involvement in the matters at issue herein; and Aramark and its staff and other employees assigned to the Santa Rita account, ROEs 51-100 and their involvement in the matters at issue herein;  DOEs 1-50 and ROEs 1-100  are defendants who caused, and are responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with or aiding and abetting others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to plaintiffs' rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action. Plaintiffs allege that DOEs 1-50 and ROEs 1-100 proximately caused said incidents, injuries, violation of constitutional and legal rights,  and damages by reason of their negligence, breach of duty, negligent supervision, management or control, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission.

30.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOE 1-50 and ROE 1-100 and therefore sue said defendants by such fictitious names.  Plaintiff will amend this FAC further to supply true names and capacities when the same are ascertained and will

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seek leave to amend further facts involving them are ascertained.  DOEs 1-50 are sued in their individual and official capacities.

## IV.  EMERGENCY RELIEF

31.     As previously recounted, prisoner-plaintiffs ERIN ELLIS and DOMINIQUE JACKSON remain in dire straits in the Santa Rita Jail, continuously, both being more than four months pregnant and in substantial discomfort, with intermittent bleeding, and suffering health complications.  Plaintiff JACKSON has a pre-existing cardiac condition, is pregnant with twins, and the physician who was treating her prior to her incarceration declared that her pregnancy is "high risk."  Both women have been explicitly and pointedly denied and refused assistance or accommodation for their condition by defendants, including but not limited to meaningful attention from a doctor or other qualified practitioner, adequate and sufficient nutrition.  Instead, they are repeatedly advised they should agree to abortion, or defendants disregard these plaintiffs' requests for medical and nutritional assistance.

32.     Instead, defendants have repeatedly demanded that plaintiffs agree to have an abortion, accused plaintiffs of being drug addicts, and refused all other recognition and assistance for each plaintiff's delicate condition.  Other pregnant women—including those who miscarried—have similarly been scorned, branded and mistreated in the jail in recent times—under a regime marked by a striking and most distasteful animosity towards women prisoners---and particularly those thought, rightly or wrongly, to have addiction issues, and studied, often openly scornful, indifference to their serious medical and hygienic needs.

33.     These women now seek extraordinary relief from this Court on an emergency basis, in circumstances where all the plaintiff-prisoners are acutely aware that three pregnant women have recently miscarried in the jail or just after getting out, after being denied medical assistance; and a third was left in labor, screaming all night, in a solitary confinement cell.  Thus, all plaintiffs must legitimately fear that they will be ignored and left to languish without help, even if beginning to miscarry, unless this Court intervenes with Order(s) sufficient to guarantee protection of their health and well-being, and that of her unborn child.

34.     Plaintiffs therefore seek a comprehensive remedy, by decree involving big oversight, discussed further below, which will ensure that they and all pregnant women prisoners who come into defendants' custody receive all needed accommodation—including decent, nourishing food, warm clothing and blankets, proper rest, fresh air and exercise, etc, as well as timely medical

attention and monitoring, doctor and hospital visits, and pre-natal counseling along with, where needed, addiction services—from defendant Sheriff's and CFMG staff members while they are in custody.

## V.  STATEMENT OF FACTS

35.     The "mission statement" for the defendant Alameda County Sheriff's Department states that the Department will provide "Humane treatment to those in our custody, while demonstrating: Ability to enforce the law fairly; Commitment to professionalism; Service to the community with integrity and trust; and, Obligation to duty with honor and pride."  But the facts show that women prisoners are not treated humanely, and the law is not fairly applied.  Women receive unfair and discriminatory treatment on a routine basis, including being short changed on access to education and work, and;

36.     Greater limitations than male prisoners to clean laundry, feminine hygiene products, the ability to converse with others, and even the freedom to choose where to sit during meals.

37.     The Santa Rita jail is one of two jails in Alameda County, located in the remote eastern reaches, near Dublin.  The other jail is in downtown Oakland.  Women are held only at Santa Rita.  On information and belief, there are approximately 250 women held there at any given time, of whom, on average, about ten are pregnant.  Most of these women prisoners are pre-trial detainees unable to afford bail, but quite a number are also serving time, mostly for probation violations.  In the course of a year, roughly 150 pregnant women will have been under the custody and control of the Alameda County Sheriff's Office at Santa Rita for some period of time.

38.     The Sheriff's Department has a contract with the California Forensic Medical Group, CFMG, to provide necessary medical care and services to prisoners at Santa Rita, under which CFMG apparently assigns various practitioners and other personnel who work at the jail, and others who visit intermittently for various purposes.  CFMG is said to set the procedures and protocols by which prisoners receive (or don't receive) medical attention and care, including the supervision and management of the "infirmary" and the Undersigned have been advised that the Sheriff's Department regards CFMG as wholly and solely responsible for dealing with any and all medical problems that Santa Rita prisoners may have, including pregnancies.

39.     The Sheriff's Department has a contract with the Aramark Correctional Services, LLC, to produce over 15,000 meals a day, on the premises at Santa Rita Jail.  These meals are used to feed the prisoners, including plaintiffs and class members, incarcerated at Santa Rita Jail, as well as

to provide a revenue stream through sales of MRE to other county jails in the area.   On information and belief, the Undersigned asserts on information and belief that the Sheriff's Department and Aramark are jointly responsible for the operation, management and maintenance of the food production, inasmuch as the Sheriff provides the prison labor, at no cost, to staff and work in the food preparation, and deputies provide security and oversight along side Aramark employees.

### A.   Maltreatment of Pregnant Women Prisoners

40.     In point of fact, the practice of CFMG practitioners and other personnel in monitoring and attending to the progress of pregnancies amount women at Santa Rita, and the level of concern or engagement in the project of such care, is simply dismal.

41.     Pursuant to 15 CCR §1210(b) the Sheriff is required to have each pregnant inmate examined by an Obstetrical Physician or Obstetrical Nurse Practitioner, and to develop an individualized "treatment plan."   To plaintiffs' knowledge, no plan of care is or has been since longtime developed for each pregnant prisoner, and the "care" provided ignores altogether the harmful and detrimental consequences to mother and fetus of the unnecessarily and unjustifiably punitive and stress-inducing regimens for women prisoners at Santa Rita.  These include madly frequent, all pervasive strip searches and body cavity searches, a profligate, also unjustified use of solitary confinement, routine and regular disregard of pregnant women prisoners' requests for medical assistance, and the general practice of scorn and harassment of pregnant women prisoners by both CFMG and Sheriff's Department personnel.

42.     None of the plaintiffs or anyone they know of have been given or told of any treatment plan.  Women who complain of not feeling well or ask to see a doctor are often harshly accused of using illegal drugs---particularly by Defendant DIVINE, a Sheriff's deputy---and often punished in Solitary Confinement, or by baseless, wholly unjustified, unconstitutional strip searches or body cavity searches, or by being put outside in the cold for hours on end without warm clothes or blankets. When plaintiffs request that a urine test be administered to disprove the false accusations levied against them by defendants, defendants refuse, and insist instead on the invasive, humiliating and often injurious strip and body cavity searches.

43.     Further, rather than provide and implement plans of care for plaintiffs as required by Regulation, defendants have instituted a program of constant monitoring of pregnant women's vital signs, consisting of recording blood pressure and pulse at least three times a day.  As part of this "program," some plaintiffs are awakened between midnight and 4:00 a.m., every night---

notwithstanding pregnant woman's well-known, vital <u>need</u> to get adequate rest---in order for vital signs to be taken and recorded.

44.     Due to the lack of care plans and refusal to provide for the medical needs of the women, women who have been abusing opioids are generally forced to enter immediately into withdrawal without use of medical intervention.  Defendant Sheriff and Jail's conduct violate California Health & Safety Code §11222. These women are not provided "medical aid as necessary to ease any symptoms of withdrawal from the use of controlled substances" as required but placed into the general housing unit and subjected to immediate withdrawal.  Since pregnant women are assigned the lower bunk, they, not infrequently share bunks with prisoners in the throes of opioid withdrawal which can involve vomiting and loss of bowel and urinary tract control.  Pregnant women then are at the down-stream reception of these human wastes.  There are no chairs in the Units.  The only place for pregnant women to sit or lie down is on their bunks.  When these human wastes infest their bunks, pregnant women have no place to go, and must weight for the convenience of sheriff's deputies to respond with cleaning supplies and fresh linens and blankets.  Nonetheless, these prisoners in withdrawal are not provided any assistance and withdrawal can be ongoing for hours, if not days.

45.     The Defendant Sheriff and Jail are unconcerned about the welfare and safety of their prisoners, and think only in rigid, institutional frameworks of punishment, coercion and control.  Showers have no shower curtains, and water gets on the bathroom floor.  The bathroom floor has no drain and the floors are wet, slippery and dangerous.  Prisoners, to remedy these problems, fashion shower curtains out of plastic bags, and place towels on the floor.  Defendant Sheriff in their frequent raids and shakedowns of the housing units, have deemed these shower curtains illegal and routinely rip these shower curtains off and take them away.  As a result of these raids, there have been not infrequent slips and falls, including slips and falls of pregnant women, who have no means to access the toilets except to traverse these wet, slippery floors.

46.     Plaintiffs receive an extra ration of eight (8) ounces of milk, but otherwise get no additional fresh fruits, vegetables or other good protein nutrition, and certainly no balanced diet.  Meat products served at the jail are widely regarded, including by plaintiff, as unfit for human consumption.  Pregnant prisoners are fed a peanut butter and jelly sandwich, with perhaps a cookie or an apple, and their extra cup of milk, for lunch and snack.  Dinner is beans, boiled vegetables and pasta, with some bread.  In one striking element of the daily routine, coldly illustrating the essentially

anti-human character of the Santa Rita regime, breakfast is served at 3:30 a.m. each day.  Many women and these and other pregnant women in particular don't have the energy to get up and eat at that hour or are unwilling to trade their rest for the crappy repast they know awaits them.  In short, the diet provided is grossly inadequate for the basic nutritional needs of a pregnant woman and her developing child.

47.     When the pregnant women report to the staff that they are hungry, the response is that they should purchase food from the commissary.  The commissary food is overpriced, high in sodium, additives and preservatives, and low on nutritional value.  Many of these women are from low income families, and the Sheriff uses every transactional chain to pad his budget.  Family members must travel to Santa Rita and personally deposit cash into their loved ones' commissary.  Use of the electronic deposits results in up to a 10% of higher surcharge.  Many of these commissary foods are dried and would normally be rehydrated with boiling or very hot water.  Hot water is available to the women only during POD time.  And POD time is frequently denied based upon the whims or the ill-humor of the sheriff's deputies, sometimes for days.  When denied POD time, the only means of hydrating food is through the bathroom spigot, which warm produces warm water and hydrates packaged food so that is neither tasty, nor palatable.

48.     Many of these women are desperate for food, and yet still refuse to eat the food provided by defendants.  This is due to the obvious rampant rodent infestation in the kitchen, and regular reports by the kitchen workers of unsanitary conditions.  There have been reports of rodents cooked into the beans.  Prisoners have been served meals with live rodents in the food bag or on the tray.  Prisoners have received meals with rodent feces in the meals.  Prisoners frequently receive meals with clear indications that rodents have partaken of the food before its arrival.  Prisoners report sightings of rodents exiting food carts as food carts arrive at the housing units and exiting refrigerators holding trays of food in the Housing Unit.

49.     As a result of defendant's apparently programmatic, ingrained habits of maltreatment, and vindictiveness, on the part of individual deputies---especially where women have or have had addiction problems---pregnant women have suffered termination of pregnancy either through miscarriage, or the fetus losing viability. Plaintiff CHRISTINA ZEPEDA, who was in custody from August through November 2017, and as a result of defendants' described maltreatment, began bleeding so badly she was rushed by ambulance to the hospital, where she had a miscarriage.  And plaintiffs are informed and believe that another woman, Paramdeep Kaur who was pregnant and in

custody at Santa Rita this past fall, also suffered a miscarriage.  And Plaintiff JACLYN MOHRBACHER, who at the initiation of this action was pregnant, but due to the brutal treatment of defendants, including denial of medical care, repeated abusive confinement in solitary, with repeated strip and body cavity searches, suffered a miscarriage in the interim.  The Defendant Deputies instead of calling for medical assistance, allowed Plaintiff MOHRBACHER to continue bleeding; treating her in such a heartless manner as demonstrated by their refusal to provide her with menstrual pads but forced her for many hours to bleed all over her clothing, while continually falsely accusing her of misusing drugs.

50.     Also, this past July, in keeping with Santa Rita's routine of punishment and abuse for pregnant prisoners as already recounted, a woman was placed into solitary confinement after she complained of cramps and pain, Then, despite the mandate for half-hour checks on her condition, all the deputies and medical personnel ignored her, throughout the night.  The woman was experiencing labor pains, and she began screaming; her screams went on for hours, and of course were agony for the other women prisoners to hear echoing throughout the night; and no deputy, or CFMG person, checked on her welfare before morning; by when this woman, known as Candace Steele had delivered her baby, alone.  She reported that the umbilical cord was wound around the baby' neck when it emerged, and that she had to poke her finger down its throat---acting on instinct---to get it started breathing.  Defendants have asserted that---where such a person, and, implicitly, such an event apparently occurred---it was because Candace was medically examined and said to be experiencing false labor---the Braxton-Hicks syndrome---but have failed to justify their wrongful seclusion of Candace in solitary confinement, the failure to make regular checks on her welfare, actions to muffle her screaming and patent refusal to summon medical aid.

51.     This practice of solitary confinement, while labeled differently, results in the same confinement, being placed in a small cell, with only a bed and toilet, isolated from others, and having very limited human contact, often up to 23 hours a day of isolation.  This is the same condition when pregnant women are placed in the "infirmary". The infirmary alleged is wholly subject to the control and regulation of defendant CFMG.  The conditions in the infirmary are often even harsher as pregnant women are denied beds and forced to sleep on a thin pad on the floor, and the rooms are kept dark so that the only light comes in from the glass in the doorway, so dark that it is not even possible to read or pick out mouse fecal matter served in meal trays.

52.     In sum, from the accounts of these women, and more who continue to connect and add

1
2
3
4
5
6

their voices---and notwithstanding disclaimers by the County defendants, or CFMG defendants hiding behind obscure provisions of a contract---it is clear there are gross deficiencies in the accommodation of pregnant women prisoners at Santa Rita, which have caused and continue to cause great injury to numerous women (e.g., the wrongful death of stillborn children), and deprivation of fundamental rights in the form of widespread, indeed systemic Deliberate Indifference to Serious Medical Needs these women obviously have, and gross denial of Due Process, especially for the unborn, and will go on causing and risking such injuries, losses and deprivations if nothing is done.

7

## B.  Discrimination Against Women in General

8
9
10
11
12
13
14
15
16
17

53.     Furthermore, Defendants' abuse and mistreatment of women prisoners is part and parcel of the discrimination and unequal treatment meted out to women prisoners as compared to male prisoners.  Women prisoners are denied the educational classes and opportunities available to male prisoners; denied the access to outdoor (fresh air) or yard time and yard space available to male prisoners.  Defendants impose greater repression and restrictions, including being prohibited from talking during meals, so that one prisoner cannot offer extra unwanted food to another, or one cannot ask for another's unwanted food.  Women prisoners cannot exchange information nor share support regarding defendants' programmatic abuse during the one period of time they are together.  Women prisoners have greater restrictions than male prisoners, including being told where to sit during meals. Women prisoners are strip searched and subjected to body cavity searches for little or no good reason---except to maintain domination---with greater frequency and regularity than male prisoners.

18
19
20
21
22
23
24
25

54.     Grievance Procedures.  In order to commence grievance procedures, prisoners are required to request a grievance form from a Sheriff's deputy.  The Sheriff's deputy, per defendant Sheriff's policy 16.03 "shall" provide the prisoner with a grievance form.  However, these deputies frequently fail or refuse to provide the grievance forms, either informing the women prisoner that she should not grieve the issue, that the issue is not grievable, or to simply grossly delay and then fail to provide the forms requested.  While the procedure prescribes that the prisoner is provided a pink carbon of the completed form with a grievance number, at times the pink carbon is not provided to the prisoner.  And while the Jail's "Grievance Unit" is required to store all grievances filed and address the grievances, clearly that is not the case.

26
27
28

55.     This abuse and mistreatment also directly involves violations of existing jail policies and procedures, California statutes and California regulations.  Despite repeated complaints and even prior lawsuits, defendants and each of them failure and refusal to comply with policies and

procedures, California statutes and California regulations, even after notification of resulting injuries and harms, indicates callous and wanton and deliberate disregard for the safety, health and well being of the women prisoners under their control, and clearly shows programmatic mistreatment and abuse of women prisoners compared to men.

## VI.  CLASS CLAIM

56.     Within the meaning of Rule 23, F.R.Civ. P., the Class of women prisoners, and particularly the Subclass of pregnant prisoners, are both numerous and indeterminate, as women come into and leave the Jail, so that joinder of all the claims already in view is clearly impracticable. (R. 23(a)(1).  In any given year, there are as many as 150 pregnant women in defendants' custody for some period of time. Joinder is inherently impractical because the number of unnamed, future class members who will be pregnant while in defendants' custody is unknown and unknowable, and, given the transient nature of the plaintiff population and the temporal limitations of pregnancy, their identities will vary. Proposed class members are highly unlikely to file individual suits on their own behalf given the practical, legal, monetary, and fear-based barriers that impede their access to counsel to challenge defendants' abusive, coercive and punitive regime---not to mention defendants' active measures preventing proposed class members from communicating amongst themselves and with legal counsel.

57.     There are numerous common issues of both law and fact (R. 23(a)(2)), including but not limited to the factual occurrence, *vel non*, of:  i) defendants' programmatic coercion for abortions, ii) abuse and mistreatment of pregnant prisoners which threaten the viability of fetuses and often terminate pregnancies, iii) prohibiting class members from communicating amongst themselves and with legal counsel, iv) failure to develop statutorily required care plans, v) discrimination against women in access to services, classes, ability to work, rights and privileges, and, vi) failure to comply with state laws and regulations on meeting the needs of women's reproductive and menstrual needs. Legal questions, regarding, e.g, the applicability of the various state statutes mentioned above, the Constitutional standards to be applied in assessing the plaintiffs' claims, and the like, will plainly be the same with respect to all individual class members.

58.     The claims of the named plaintiffs are typical of the claims of members of the Plaintiff Class, (R.23(a)(3)), and of members of the Subclass in particular, where all the pregnant women prisoners, past, present and to come, complain in the same terms of the ill effects of defendants' nonfeasance and maltreatment, and failure to follow the law.  The fact that different individuals

suffered or may suffer different degrees of injury---obviously only certain ones suffered miscarriage, for example---is not a bar to certification, particularly where, as here, the defendants have "acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief;" per Section (b)(2) of the Rule.  The underlying injuries flowing from practice and policy are common to all pregnant women at Santa Rita to some serious, health-threatening degree, as we have shown and will show.

59.     The named plaintiffs will---and are able to---fairly and adequately protect the interests of the Plaintiff Subclass, per Sub.(a)(4) of the Rule. The named plaintiffs have no interest at odds in any way with those of the Subclass, and each has affirmed to counsel her desire and willingness to pursue the matter on behalf of the other women who will come into Santa Rita with child. The attorneys representing the named plaintiffs are experienced civil rights practitioners, well able to prosecute and carry on substantial federal constitutional litigation such as this, and with access to additional help which is even now being assembled for the larger work.  The Undersigned represent to the Court their determination to see this matter through---both as to the urgent immediate pregnancy issues and the County defendants' broader gender/sex discrimination practices against women---and, by the way, we hereby respectfully request that we be designated by the Court as counsel for the Class of present and future women prisoners at Santa Rita, and the Subclass of those among them who are pregnant.

60.     From the pleadings, and particularly the many sworn affidavits submitted with plaintiffs' pending renewed injunction motion, it is clear the defendants acted and now act and will act "on grounds generally applicable to" the Subclass, in any case, thereby "making final injunctive relief appropriate" to the class as a whole. The Plaintiff Class may therefore be properly certified under R.23(b)(2).  Certainly, also it is patent that both factual and legal questions common to the Subclass predominate here over individual concerns, so certification is also proper under Section (b)(3).

61.     In sum, plaintiffs are entitled to have the Subclass of pregnant prisoners certified *pro tanto* at the very least, or otherwise separately from the main class alleged herein, so that the proceedings regarding emergency relief for all pregnant women who are in or may come into Santa Rita can go forward without hindrance; and work on the claims of the Class as a Whole can abide further attention from the parties and the Court in the near future.

//

# VII.  PLAINTIFFS' CLAIMS

## FIRST CLAIM FOR RELIEF

**Violation of the Fifth and Fourteenth Amendments – Substantive Due Process
(42 U.S.C. § 1983)**

62.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 of this Complaint.  These facts constitute violations of plaintiffs and class members rights to substantive due process guaranteed pursuant to the Fifth and Fourteenth amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF

**Unreasonable Denial of Necessary Medical Care to Pre-Trial Detainees
Violation of the Fourth and Fourteenth Amendments
(42 U.S.C. § 1983)**

63.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62 of this Complaint.  These facts constitute unreasonable denial of necessary medical care to pretrial detainees, including pregnant prisoners in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

## THIRD CAUSE OF ACTION

**Deliberate Indifference
Violations of the 8th and 14th Amendments**

64.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 63 of this Complaint.  These facts constitute deliberate indifference to the serious medical care need of State and local Prisoners in violation of the Eighth and Fourteen Amendments of the United States Constitution.

## FOURTH CAUSE OF ACTION

**Discriminatory Treatment of Pregnant Women
Violation of the Fifth and Fourteenth Amendments**

65.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64 of this Complaint.  These facts constitute discriminatory treatment of pregnant women in violation of the Fifth and Fourteenth Amendments.

## FIFTH CAUSE OF ACTION

**Discriminatory Treatment of Women in Jails
Violation of the Fifth and Fourteenth Amendments**

66.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 65 of this Complaint.  These facts constitute discriminatory treatment of pregnant women in violation of the Fifth and Fourteenth Amendments.

FIFTH CAUSE OF ACTION

**Cruel and Unusual Punishment**
**Violation of the Fourth, Eighth and Fourteenth Amendments**

67.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 66 of this Complaint.  These facts constitute cruel and unusual punishment of pretrial detainees and prisoners in violation of the Fourth, Eighth and Fourteenth Amendments.

SIXTH CAUSE OF ACTION

**Violation of the First and Fourteenth Amendments**

68.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 67 of this Complaint.  These facts constitute interference, suppression and denial of Plaintiffs and class members rights to free speech, including the right to protest conditions, protected under the First and Fourteenth Amendments.

SEVENTH CAUSE OF ACTION

**Bane Act**
**(Cal. Civ. Code § 52.1(b); Cal. Gov. Code §§ 815.2(a) & 820(a))**

69.     Plaintiff realleges and incorporates the allegations of the preceding paragraphs 1 to 68 of this Claim.

70.     Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code §52.1.  Defendants County of Alameda, Alameda County Sheriff's Office,  Gregory Ahern,, Does 1-50, acting under color of state law and as policy-making authorities, maintained policies, customs, or practices permitting or deliberately indifferent to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent the violations of plaintiffs and class members First, Fourth, Fifth, Eighth and Fourteen Amendment rights protected by he U.S. Constitution and art. I, § 7 of the California Constitution.

71.     Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE are indirectly and vicariously liable, through the principles of respondeat superior, for

injuries proximately caused by acts or omissions of their employees acting within the scope of their employment.

72.     As a direct and proximate result of Defendants ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, T. POPE, T. RUSSELL, D. SKOLDQVIST, LT. HATTAWAY, SGT. CALAGARI, DEPUTY DIVINE  (#512), DEPUTY DEBRA FARMANIAN, DEPUTY WEATHERBEE (#238),  DEPUTY TANIA POPE, DEPUTY WINSTEAD, DEPUTY CAINE,  ALAMEDA COUNTY   and John & Jane DOEs, Nos. 1 – 50 actions and inactions, Plaintiffs suffered injuries entitling them to receive compensatory damages against said defendants.

EIGHTH CAUSE OF ACTION

**Negligence**

73.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 72 of this Complaint, to the extent relevant, as if fully set forth in this Claim.

74.     Defendants have a duty of care to plaintiffs and class members to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, and a duty of care to hire, train, supervise and discipline Jail employees so as to not cause harm to plaintiff and class members and to prevent violations of their constitutional, statutory and common law rights.

75.     The above-described acts and omissions of defendants breached the duty of care defendants owed to plaintiffs and class members

# VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to:

1.     Certify the Class of women prisoners at Santa Rita under Rule 23, F.R. Civ P., and also the Subclass of women prisoners who are pregnant, and permit the named plaintiffs and their counsel to represent the Class and Subclass and to proceed accordingly.  In the alternative, hold certification of the broad class in abeyance pending further development of the grounds for it, but recognize the Subclass for all purposes connected with its plea(s) for equitable relief herein.

2.     Make findings of fact reflecting the general and specific failings and inadequacies of both groups of defendants' approaches to and practice in the care of pregnant prisoners, the pattern and practice of defendants' non-feasance and maltreatment of pregnant prisoners,

and defendants' violations of statutory, regulatory and constitutional requirements in dealing with pregnant prisoners.

3.    Initiate a serious effort, perhaps with a Rule to Show Cause, to bring about defendants' early compliance with the community treatment program law Penal Code §1170., and/or any other feasible and available means and steps to get and keep pregnant women out of the Santa Rita jail.

4.    In the event a ready process for getting and keeping plaintiffs out of the jail is not readily found, and to the extent and for the time any pregnant women are ordered held in the Sheriff's custody, enter a preliminary and permanent Injunction which will,

A.   **Prohibit** defendants from:

a.    coercion or pressure on pregnant prisoners to consent to a preterm termination of their pregnancy;

b.    placing pregnant prisoners in solitary confinement, and/or ordering them to submit to multiple strip searches and body cavity searches without first utilizing less punitive and intrusive means including urine tests and having objectively reasonable grounds to suspect them of hiding contraband;

c.    placing pregnant prisoners outdoors without adequate outerwear, and clothing;

d.    holding pregnant prisoners outdoors against their will for any length of time, or keeping the heat down in residential units, and the bright lights on all night;

e.    punishing or threatening to punish women prisoners for exercising their right to free speech during meals or during 'pod time';

f.    touching or searching plaintiff's food unless defendants' hands are covered in clean, and new sanitary gloves;

g.    coerce or pressure or attempt to persuade pregnant prisoners to agree to abortions;

h.    intervening or interfering with attorney client communications

      **And,**

B.  Affirmatively **Order and direct** defendants to:

a.    Fully comply with all applicable state statutes and regulations, and develop a legitimate individual treatment plan for each pregnant prisoner, *and carry it out completely*!

b.    Fully comply with all applicable state statutes and regulations for a sufficient,

balanced, nutritious diet approved by a doctor;

    c.    Fully comply with state law on provision of appropriate and sufficient materials for each woman prisoner "necessary for (1) personal hygiene with regard to her menstrual cycle and reproductive system" (Penal Code §3409) during the entire duration of her incarceration under the custody of defendants;

    d.    No less than the minimum outdoor exercise prescribed by state regulations;

    e.    Permit confidential legal contact visits between plaintiffs, class members and their attorneys;

5.    Enter a preliminary and permanent injunction on behalf of the broad Class of women prisoners which will counter and remedy the County defendants' broader unconstitutional practice(s) of discrimination against women in general, compared to men, as complained of and to be shown further;

6.    Award compensatory and punitive damages to individual plaintiffs against defendants in amounts to be determined at trial;

7.    Award costs and fees for this action, including attorneys' fees;

8.    Grant such other and further relief as this Court deems appropriate.

LAW OFFICE OF YOLANDA HUANG

_____/s/ Yolanda Huang_____
YOLANDA HUANG

DENNIS CUNNINGHAM

_____/s/ Dennis Cunningham__ ____
DENNIS CUNNINGHAM