1

2

3

4                            UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    JACLYN MOHRBACHER, et al.,              Case No.  3:18-cv-00050-JD

8                     Plaintiffs,

9            v.                              **ORDER RE CLASS CERTIFICATION**

10   ALAMEDA COUNTY SHERIFFS
     OFFICE, et al.,

11                    Defendants.

12

13          In this long-running jail conditions case, named plaintiffs alleged a broad array of claims

14   on behalf of themselves and a putative class of female inmates about the treatment of women

15   incarcerated in the Santa Rita Jail operated by defendant Alameda County Sheriff's Office

16   (ACSO).  *See* Dkt. No. 203 (fourth amended complaint).  ACSO and defendant Aramark

17   Correctional Services, LLC, settled with plaintiffs on all claims directed against them just before

18   the start of trial in May 2023.  *See* Dkt. No. 351.  The claims against Aramark involved food

19   services and the adequacy of nutrition provided to inmates.

20          At the Court's direction, plaintiffs amended their motion to certify a class to address the

21   sole remaining defendant, the California Forensic Medical Group (CFMG), which provides jail

22   medical services under contract with ACSO.  Dkt. No. 368.  The only claims remaining in the case

23   concern the medical care of pregnant women inmates.  The main class proposed by plaintiffs, and

24   the only one specifically defined in the motion, is for "[a]ll current and future females who were

25   pregnant during their incarcerated [sic] in Santa Rita Jail since January, 2017."  Dkt. No. 370-1 at

26   9.  Plaintiffs seek to certify this class under Federal Rule of Civil Procedure 23(b)(2).  Plaintiffs

27   also mention a putative "damages class" of "pregnant women" and a "sub-class of pregnant

28   women with high risk pregnancies," both of which are said to be appropriate for certification

under Rule 23(b)(3).  *Id.* at 2.  The discussion of these putative classes was underdeveloped in many respects, and the meaning of "high risk pregnancies" was never defined.  Plaintiffs also did not explain how the overlapping classes of pregnant women under Rule 23(b)(2) and Rule 23(b)(3) might be untangled or harmonized in a way that would permit both to proceed.  Even so, in the interest of resolving any ambiguities, the Court will address the proposed (b)(3) classes.

Plaintiffs have not shown that certification is warranted under Rule 23(b)(2) or (b)(3).  Consequently, certification is denied.  The case will go forward on behalf of the named plaintiffs individually.

## LEGAL STANDARDS

The overall goal of Rule 23 is "to select the method best suited to adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (cleaned up).  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).

Plaintiffs bear the burden of proving by a preponderance of the evidence that the proposed classes satisfy all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b).  *Id.*; *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 424 (2022).  The Court's analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," but the merits are to be considered only to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen*, 568 U.S. at 465-66 (internal quotations and citations omitted).  The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015).  The decision of whether to certify a class is entrusted to the sound discretion of the district court.  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

The commonality requirement of Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Because "any competently crafted

United States District Court
Northern District of California

1  class complaint literally raises common questions," the Court's task is to look for a common

2  contention "capable of classwide resolution -- which means that determination of its truth or

3  falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

4  *Alcantar*, 800 F.3d at 1052 (internal quotations omitted).  What matters is the "capacity of a class-

5  wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-*

6  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted) (emphasis in

7  original).  This does not require total uniformity across a class.  "The existence of shared legal

8  issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

9  with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

10  (9th Cir. 1998), *overruled on other grounds by* Dukes, 564 U.S. 338.  The commonality standard

11  imposed by Rule 23(a)(2) is "rigorous." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir.

12  2013).

13  Rule 23(b)(3) sets out the related but nonetheless distinct requirement that common

14  questions of law or fact predominate over individual ones.  Fed. R. Civ. P. 23(b)(3).  This inquiry

15  focuses on "'whether the common, aggregation-enabling, issues in the case are more prevalent or

16  important than the non-common, aggregation-defeating, individual issues.'" *Olean*, 31 F.4th at

17  664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  Each element of a

18  claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important

19  questions apt to drive the resolution of the litigation are given more weight in the predominance

20  analysis over individualized questions which are of considerably less significance to the claims of

21  the class," *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  Rule

22  23(b)(3) permits certification when "one or more of the central issues in the action are common to

23  the class and can be said to predominate," even if "other important matters will have to be tried

24  separately, such as damages or some affirmative defenses particular to some individual class

25  members." *Tyson Foods*, 577 U.S. at 453 (internal quotations omitted).

26  "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a),"

27  *Comcast*, 569 U.S. at 34.  "If the defendant provides evidence that a valid defense -- affirmative or

28  otherwise -- will bar recovery on some claims," then the Court must "determine, based on the

particular facts of the case, 'whether individualized questions . . . will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).'" *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (quoting *Olean*, 31 F.4th at 669). "The question is not whether a great number of plaintiffs will win or lose at trial on the individualized issue." *Id.* at 1067 n.11. Rather, the Court "must assess the necessity and manageability of the potential class-member-by-class-member discovery process and trial." *Id.* Individualized issues "weigh heavy in the predominance balancing" if discovery and trial "must assess thousands of claims one claim at a time." *Id.*; *see also Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (decertifying class where trial of individualized issues would be "prohibitively cumbersome," and plaintiffs did not prove that class issues predominated).

The "requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a)" and "courts must consider cases examining both subsections in performing a Rule 23(b)(3) analysis." *Olean*, 31 F.4th at 664. The Court finds it appropriate to assess commonality and predominance in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017).

A Rule 23(b)(2) class may be certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195. The primary use of Rule 23(b)(2) classes has been the certification of civil rights class actions. *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy must also be shown for a Rule 23(b)(2) class. *Zinser*, 253 F.3d at 186.

For Rule 23(b)(2), the Court is not required "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "It is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id.*

1   (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)) (internal quotations omitted); *see*

2   *also Parsons*, 754 F.3d at 688 (requirements of Rule 23(b)(2) are "satisfied when members of a

3   putative class seek uniform injunctive or declaratory relief from policies or practices that are

4   generally applicable to the class as a whole.").

**DISCUSSION**

6          Although CFMG raises a number of objections to plaintiffs' certification requests, two

7   elements under Rule 23(a) are enough to resolve the question of certification in all respects. These

8   elements are commonality and typicality, which as discussed must be satisfied as a predicate for a

9   (b)(2) or (b)(3) class.

10         As our circuit has stated:

> To establish typicality, as required by Rule 23(a)(3), plaintiffs
> must show that "the claims or defenses of the representative parties
> are typical of the claims or defenses of the class." Fed. R. Civ. P.
> 23(a)(3). "The test of typicality 'is whether other members have
> the same or similar injury, whether the action is based on conduct
> which is not unique to the named plaintiffs, and whether other
> class members have been injured by the same course of conduct.' "
> *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)
> (citation omitted). Because the considerations underlying the two
> requirements overlap considerably, the Supreme Court has noted
> that "[t]he commonality and typicality requirements of Rule 23(a)
> tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157
> n.13 (1982).

18   *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022).

19         The problem for plaintiffs is that they have not come close to establishing that the

20   pregnancy complications they allege were the result of policies or systemic practices of CFMG, or

21   that their personal experiences satisfy the demands of commonality, typicality, or predominance.

22   Each of the named plaintiffs described care associated with medical issues specific to her

23   pregnancy. For example, plaintiff Zepeda says that she was four-months pregnant when she

24   arrived at Santa Rita jail in some distress. Dkt. No. 370-1 at 4. She alleges that CFMG

25   overlooked indications of a miscarriage and that she did not receive adequate medical attention

26   until transported to a local hospital. *Id*. Plaintiff Mohrbacher says she had a high-risk pregnancy

27   that CFMG did not properly care for, even though she was transported to a local hospital for

28   sonograms and received follow-up treatment. *Id*. at 5-6. Plaintiff Ellis was released from custody

in the last month of pregnancy "so she could deliver her baby in the community," but alleges that she gained a substantial amount weight due to a bad diet in custody, and was not provided with appropriate shoes to wear or ready access to a bathroom. *Id*. at 7-8. Plaintiff Ibe says she developed hemorrhoids while pregnant in custody because her diet lacked enough fiber. *Id*. at 7.

Reports prepared by Dr. Kimberly Sorem, an OBGYN physician retained by plaintiffs, are similarly episodic. *See* Dkt. Nos. 371-2, 371-3. CFMG objects to the reports on a variety of grounds, *see* Dkt. No. 374 at 6-7, but the Court does not rely on the reports in any way other than to note that Dr. Sorem simply summarizes medical information for Zepeda and Mohrbacher, opines on whether individual treatment decisions were adequate in her view, and offers her own suggestions on the provision of pregnancy care.

What's missing in plaintiffs' certification request is any evidence that these experiences were the result of common practices or policies of CFMG with respect to pregnant inmates in the Santa Rita Jail, or that they were typical of what pregnant inmates encountered in custody. Plaintiffs say that approximately 600 pregnant women were housed in Santa Rita jail between 2017 and 2022. *See* Dkt. No. 370-1 at 8. They adduced evidence for only a tiny handful of those women, and did not link that evidence to anything that might be deemed a policy or practice affecting pregnant inmates in a common fashion. In effect, plaintiffs did nothing more than indicate that the medical care provided to a few inmates may have fallen short on occasion.

This is all in sharp contrast to the evidence adduced in *Parsons*, where a Rule 23(b)(2) class of Arizona state prisoners was certified for claims about medical care provided by the Arizona Department of Corrections (ADC). To obtain certification, plaintiffs submitted "hundreds of documents" acquired in discovery, multiple expert reports, and detailed declarations, all to the effect that "specific ADC policies and practices" exposed inmates to a substantial risk of harm from the "creation of lengthy and dangerous delays in receiving care." *Parsons*, 754 F.3d . at 663-64. To show that these policies applied across the board, and were not just scattered occurrences, plaintiffs proffered internal assessments and communications by ADC staff, reports by contractors, and declarations from ADC officials about ADC's policies. *Id*. at 663. This record allowed the district judge to determine that 10 policies and practices applied to all class members,

each of which afforded "a distinct basis for concluding that members of the putative class satisfy commonality, as all members of the class are subject identically to those same policies and practices, and the constitutionality of any given policy and practice with respect to creating a systemic, substantial risk of harm to which defendants are deliberately indifferent can be answered in a single stroke." *Id.* at 679.

Not so here.  At most, plaintiffs offer only the individual experiences of a small number of pregnant inmates.  There is no doubt that these experiences, as plaintiffs describe them, were unpleasant and of concern.  But cataloging a handful of incidents is not the same as identifying policies and practices "with sufficient precision and specificity" to demonstrate that plaintiffs' experiences were typical of the class and attributable to common policies capable of evaluation and resolution on a classwide basis.  *Id.* at 683.  "Rule 23(a) is not a pleading standard; rather it requires proof that there are '*in fact* . . . common questions of law or fact.'"  *Id.* (citing *Wal-Mart*, 564 U.S. at 350) (emphasis in original).

This is enough to deny certification of any of the proposed classes for failure to satisfy the elements of Rule 23(a).  Plaintiffs have also not demonstrated that the putative class members seek uniform relief from a practice applicable to all of them for purposes of Rule 23(b)(2), or that common questions of law or fact predominate over individuals ones for purposes of Rule 23(b)(3).

## CONCLUSION

The parties are directed to jointly file by April 18, 2024, a proposed pretrial and trial schedule based on a trial date in November 2024.

**IT IS SO ORDERED.**

Dated:  March 22, 2024

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

7